Case number 24-3907, Eric Smith v. United States Security and Exchange Commission. Oral argument is not to exceed 15 minutes for the petitioner, 10 minutes for the respondent, 10 minutes for the intervener. Russell Ryan for the your honors and may it please the court. Russ Ryan with the New Civil Liberties Alliance on behalf of the petitioner. Probably consistently, just close as you can to the mic so everyone can hear. Yes. Is that better? Russ Ryan with the New Civil Liberties Alliance on behalf of the petitioner Eric Smith. And may I please reserve two minutes for rebuttal. This court should set aside the SEC's order affirming FINRA's sanctions against Mr. Smith for at least two reasons. First, FINRA had no lawful authority over Smith because, as everyone agrees, FINRA is a private self-regulatory corporation. That is, it regulates itself and its members, not others. But everyone also agrees that Smith never registered with FINRA nor consented to its disciplinary authority over him. Second, Smith was entitled to a jury trial in an Article III court because the Supreme Court told the SEC just last year in the Jharkhasi case that it can't impose penalties for fraud-based claims outside of an Article III court with a jury trial. Can I ask your first question about lawful authority? It was difficult for me to tell from your briefing. Is that a statutory argument you are making or a constitutional one? It's pretty much a statutory one. They're trying to take a statutory definition. But you didn't even cite the statute. So the statute covers those associated with a member of FINRA. And the agency here found that there was this association. So why isn't that enough as a statutory matter under substantial evidence review? Well, the statute doesn't give FINRA the authority to prosecute people even if they are associated persons of a member. The statute just says that when an association like FINRA wants to be registered with the SEC, it needs to have disciplinary processes in place that are fair and that ensure discipline for the member firms and those who've become associated members. But it doesn't give FINRA the authority to go after the firms, I mean the individuals. Unlike other provisions of the federal securities laws that say if you're a broker-dealer firm, you must register with FINRA. There's no parallel provision that says if you're an associated person of a FINRA firm, you need to be a member of FINRA or a licensed person under FINRA. So there is a FINRA rule. So is the argument that the FINRA rule is inconsistent with the statute? So the FINRA rule that says associated person, meaning anyone controlling or controlled by a member. It's more just a basic principle of you have a voluntary self-regulatory membership organization and a statute just can't define an average citizen as someone who can be prosecuted, especially if you take it to its logical conclusion. Being subject to FINRA's authority, people do that voluntarily by signing an agreement to become a member of FINRA or to become associated with a member firm and register with FINRA. By doing so, they voluntarily give up any number of constitutional and procedural rights. But Smith never did that. He never either, he never got licensed. He never voluntarily consented to FINRA's jurisdiction at all. Why doesn't he follow the terms of the statute? Why doesn't he follow the terms? Well, that was a hotly disputed question of fact and for that reason, it should have been decided by a jury, not by FINRA in the first instance. That's a different, I mean we can talk about the jury issue, but you're just, you're saying he wasn't an associated person. As a factual matter, he wasn't an associated person. He was the managing partner, he was in sort of running the brokerage house. You're saying he wasn't doing trades, he wasn't advising clients, but the statute seems, as Judge Murphy was saying, the statute seems to sweep in more people than just the actual brokers. What he argued below was that whatever it was that he was doing was not sufficient to be an associated person. In addition to the fact that he never voluntarily consented to FINRA's jurisdiction, that was a hotly disputed, and you're right, we haven't argued the contrary, we haven't continued to argue that point on appeal. Instead, we have limited briefing space and limited attention to focus on the issues that we think the court would be more open to revisiting as opposed to a factual issue where the SEC's findings are entitled to affirmance unless it's supported by substantial evidence. Are you saying that we should focus on the Article III, Seventh Amendment issue? Is that what you're saying? That, and in particular, in a situation where the accused person has never voluntarily waived his right to a jury trial, to an Article III court? What do you do with personal jurisdiction case law that suggests there can be implied consent? I recognize you have a right to a jury trial, but those who agree to arbitration voluntarily give up that right via contract. I agree that there's no express consent here, but in the personal jurisdiction context, the old cases suggested that driving on a freeway in a state was implied consent to be sued in the state over torts that happened there, so there was implied consent. The analogy here, I suppose, would be that Mr. Smith implied the consented defender's jurisdiction if, as a factual matter, it was correct that he was basically running a member entity. I think in the former circumstance with personal jurisdiction, you're talking about the government exercising jurisdiction over a person. Here, we're talking about a private club, basically what the SEC's brief refers to as a private business club. I agree. I think the analogy might be because this consent is about constitutional waivers, because you're saying, I mean, what does it take to waive the right of a jury trial? That is a constitutional question, and what does it take to waive any right to not be in a particular jurisdiction as a matter of due process? The court has suggested the waiver suffices if you engage in conduct that's inconsistent with the exercise of the right. Here, arguably, you would say that, well, he was basically running a FINRA member. Is that sufficient to trigger this type of implied waiver? I'd go back to, that was a factual dispute, and that's part of the reason why there should be a jury. But I think that it's entirely different for the government to assert jurisdiction over someone based on implied consent or so forth and a private membership club to do the same thing. So I take it that your conclusion is you can never have implied consent to arbitrators, because arbitrators are private and they're asserting jurisdiction over folks. I would say if it's an arbitration run by FINRA, and that's part of the problem here, that if you accept that by whatever conduct he engaged in, he impliedly consented to FINRA's authority, then he did, and he did equally consent to arbitrating disputes with other people. And I think we need to be really careful about letting a private membership club essentially define who is a member and who is not and who is subject to its prosecutorial authority. With respect to the jury trial in the Article III question, that was decided by JARCISI. There's no meaningful difference here between the two situations. I realize you were not representing your client in the administrative proceedings. Is that right? That's correct. But JARCISI was decided before the conclusion of those proceedings. As best I can tell, your client never brought that to the agency's attention. He never did. Yes, JARCISI was decided, I think, less than two months before the 10-year ordeal came to an end. What do we do about that? Well, this is... We have pretty firm rules that we require. Generally speaking, we require people to preserve issues in the first tribunal before it gets to us. Sure, and I think the court has referred to it as issue exhaustion. And this is one of those ones that falls into the category where there's an explicit statute. And the statute here is Section 25A of the Exchange Act. And basically what it says is you do not forfeit your issues if there was reasonable ground not to raise it before the agency. And that's a much... I'd suggest that that's a more forgiving standard than the one the court found satisfied in the Jones brothers case, which required the party to prove extraordinary circumstances. So the reasonable grounds you're asserting here for not alerting the SEC that you wanted to rely on a JARCISI-type argument, even though JARCISI came out before the proceedings were concluded. What are those reasonable grounds that you would like us to find? Sure, sure. Well, to begin with, there's the FINRA process and even the SEC process on appeal does not even have an option to ask for a jury trial, much less to demand one, or an Article III adjudication. Are you saying that you couldn't have raised this issue before the SEC in the appellate process, that you thought their structure was unconstitutional along the lines of JARCISI? You couldn't have made that bad argument to the SEC or the SEC didn't have jurisdiction to reach it? Well, before JARCISI, the SEC had been pretty consistent in case after case, both in adjudications and in its briefing in the JARCISI case in the Fifth Circuit and the Supreme Court, that there are no jury trials for SEC cases and it had separately issued decisions. But obviously its position was then repudiated in JARCISI, which was concluded before your procedure was concluded. So my question is, had you raised it with the SEC? Hey, maybe you guys were wrong, but your position in JARCISI wasn't upheld by the Supreme Court. The Supreme Court went the other way. Could the SEC have adjudicated that issue or did it not have jurisdiction to appeal? Well, I think the Supreme Court has said in several cases, including the Axon case, which was coupled with a case against the SEC, SEC against Cochran, and said it in Saul against Carr, a Social Security case, that administrative agencies do not have either the competence or the expertise to decide structural constitutional issues. I'd also say that we're talking about a process that began for Mr. Smith in 2015. Here we are in 2024. JARCISI comes out three years after all the briefing is in. There's no procedure at the SEC that allows you to ask to reopen the briefing or anything like that. I know the SEC has, don't we have a bunch of rulings from the SEC where they rejected this 7th Amendment? Yes, they did it in JARCISI itself. Right, but so you said there was no vehicle to raise it, there's no vehicle to ask for reconsideration, but we have a bunch of cases where they've done it already, so it must have been raised somehow. Every time it's been raised, it's been rejected. I know, but that's a totally different argument. Your point is where you couldn't raise it, you couldn't raise it during the proceeding, you couldn't raise it after the proceeding. I think that's wrong because we have a bunch of cases where they took this on. So you're saying it was futile, that's a different point. Yes. But your argument that you couldn't do it doesn't seem to align with their practice. I think all those decisions preceded Axon, Cochran, and Carr against Saul, where the Supreme Court is made pretty clear. It's a different sort of facial argument, and then just individually in my case, I deserve a jury trial, whether it's necessary in every case, it's certainly necessary in my case. Axon was the former, right? Axon was, and has applied, I think. I can't remember. But also keep in mind that at the time, Mr. Smith had a pending motion for oral argument before the SEC, and the SEC just ignored it and went ahead and issued a decision. And also keep in mind that... We do that sometimes, too. But that would have been perhaps a logical time for him to say, you know what, we have this intervening decision. Maybe you'd want to get some extra briefing on this. The other thing, if anyone's to be blamed for not raising jargassy in the SEC case, it's the SEC itself. It had just been told by the Supreme Court that you can't do this anymore. And instead of dealing with that case, it simply went ahead and issued a decision as if jargassy never happened. And it did so, I might remind you, only after Mr. Smith, after waiting three and a half years for a decision from the SEC, filed a mandamus petition in this court. And within weeks after this court ordered it to respond to the petition, the SEC suddenly comes out with its decision unannounced, no oral argument, no nothing. And so if that's not reasonable grounds, I don't know how you satisfy that standard. It's like the Calcutt case. It's like the Jones Brothers case. As I said earlier, the Jones Brothers case was decided on, I think, a less forgiving standard. They had to show exceptional circumstances. Time is up. I think you have two minutes for rebuttal. Okay. Thank you. We'll now hear from the government. Good morning, Your Honors, and may I please the Court, Courtney Dixon for the commission. Let me say, Ms. Dixon, thank you for coming out for argument. I realize there's some headwinds in Washington right now, so I really appreciate you coming out and accommodating us. Certainly, Your Honor. The only issue that's properly before this Court on direct review from the commission's order is Mr. Smith's argument that he was not appropriately subject to FINRA's self-disciplinary proceedings under the statute and FINRA rules. The commission found, based on ample evidence in the record, that Mr. Smith controlled a FINRA member firm and then used that firm to engage in the securities business, and indeed the very misconduct that FINRA found in this case. Mr. Smith presents no argument in his opening brief to second-guess that conclusion, which, as I noted, is amply supported by the record. Instead, Mr. Smith has devoted the bulk of his brief and much of his time here today to constitutional arguments that he indisputably did not raise to the commission. Those arguments are forfeited under the Exchange Act's explicit statutory issue exhaustion requirement, and Mr. Smith has presented no reasonable ground to excuse his forfeiture. He argues that Jarkissi was an intervening change in the law, but as your honors have noted, Jarkissi, in fact, came out before the commission's decision in this case. Moreover, Jarkissi itself arose on direct review from a commission order in which the petitioner had raised and the commission addressed a Seventh Amendment claim. The Supreme Court in Jarkissi applied its existing precedents. In that case, it did not change the law. In both Island Creek and the Joseph Forrester Trucker case, this court rejected nearly identical arguments about Lucia and litigants' failure to raise Lucia. So for the same reasons, these arguments are not availing to Mr. Smith. They do raise a futility argument that the SEC had rejected the same arguments for so many times in a row that under an established exhaustion exception, which maybe we should read into reasonable cause, that would have sufficed to not raise it. Courts of Appeals have unanimously rejected that argument, your honor. There's a Tenth Circuit case, I believe, Ganella. The Tenth Circuit said a pessimistic view of the commission's likelihood is not a reasonable ground to excuse forfeiture. I think this court's forfeiture cases address this exact question that, one, this is, I mean, Congress required issue exhaustion. There's good reason Congress frequently does so. It gives the agency a chance to address the issue. It puts the agency on notice of at least, at a minimum, an accumulating risk of adhering to its position. And, again, simply because Mr. Smith thought the commission might rule against him is not a reason to excuse his forfeiture. To say it completely, essentially, I mean, I guess if you knew Jarczy was going on, you knew the SEC's consistent position on the issue. So up until the time that Jarczy came about, was there any doubt that the SEC would rule otherwise? I mean, I think we're speaking of counterfactuals here, because, of course, he didn't try to raise anything before the commission. I mean, if there's, you know, a futility, if there's some ability to look over the horizon and look at every case the agency's ever issued in this area, including a current case and current cases litigating in the Fifth Circuit Supreme Court where it's taken its position, I think you know you're going to lose. I mean, I feel just fairly certain you know you're going to lose. Again, Your Honor, courts have unanimously held that that does not excuse forfeiture, especially here, again, we have a statutory requirement to raise issues before the commission. So when this court also has talked about futility, Your Honor, it's the kind of futility of you just cannot raise the issue, the agency cannot address it. That is not what we have here, and I think Mr. Smith recognizes, and as I had discussed, litigants had raised these, the commission had addressed it. We cite cases in our brief in which the commission had addressed constitutional arguments exactly along these lines. I'm not familiar with SEC practice. Is there a way to raise kind of new precedents and new things like that without needing oral argument like here in the federal courts? We have like a 28-J letter or something like that. Your friend on the other side suggests like, well, you know, once Jerczy was decided, there wasn't really a way for us to bring it in. I don't have a specific rule cite like a 28-J letter, Your Honor, in mind. If there is, I can find out and I can let Your Honor know, but I don't think there's any question that he could have raised this to the commission and said, hey, this case just came out that I think bears directly on my case. But, you know, I'll emphasize that the fact that Jerczy, in fact, came out before this makes this a particularly easy case to reject the intervening change in the law, but even if you didn't have that, even if it was the other way around and Jerczy had come out after, I still think you're in the position of Island Creek. You're still in the position of Joseph Forrester Trucking in which, again, with Lucia, litigants said Lucia came out. It was an intervening change in the law, and this court said, no, Lucia applied existing precedents. Litigants, even before Lucia, had been raising this issue to the agency, and, of course, the agency in Lucia had been rejecting those kind of arguments until the government changed its position in the Supreme Court in that case. This is Smith's defense. If you look at the timing of proceedings before the SEC, I think this case was there for two or three years before Jerczy came out, and then the commission decided like a month or two later. So for most of the case's life at the SEC, which to me feels like a long period of time, I'm not that familiar also with how the SEC operates, Jerczy was not the law. And then it comes out, the Supreme Court's decision comes out in June, and I think the opinion comes out in August from the SEC. So it's awfully close to the time. I'm not saying they couldn't have necessarily raised it, but on the equities, there was a long period of time where you all were sitting on the, I'm not saying maliciously, but the case was sitting in the SEC without decision, and then as soon as Jerczy comes out, the decision gets, I'm not saying rushed out, but it comes right on the heels of Jerczy happening. So in that sense, the sequence of events isn't totally fair. As I had just said, I think the fact that Jerczy was two months before this decision makes it a particularly easy case. If it comes out on the next day of the SEC. Then I think you're in the position, sorry, I didn't mean to speak over you, Your Honor. Your answer's going to be I think, but just let me answer the question. So is it a day? The government's position is one day is long enough? I think it's, yes, and that's, I think. One hour? One hour's fine? If you were still in the circumstance of the Supreme Court's decision wasn't actually an intervening change in the law. I mean, the Supreme Court and Jerczy applied Grand Financiera and Tull. Those have been around for decades. And so, yes, I think you're in the same. We thought it was a change in the law? It's only a change from SEC established practice, but there's no period of time that we can be sure. If there was an actual intervening change in the law, and the litigant did not have an opportunity to raise it, the decision had come out before, and the change in the law was after, I think that would likely be a reasonable ground. But that's just we're very far away from that circumstance here. What do you, so I think there is a facial challenge exception. Could the non-delegation, private non-delegation doctrine be viewed as a facial challenge, or would you need that? So I think with respect to Mr. Smith's claims here, at bottom he seems to be challenging Fenner's ability to proceed in a disciplinary action against him. And the SEC was reviewing Fenner's disciplinary sanction. You know, had he raised his constitutional objections, had the commission agreed with him, the commission could have addressed those objections. As we cite in our brief, the commission's address, for example, appointments clause arguments. Jarkissi was a Seventh Amendment claim. I believe there was a non-delegation claim in Jarkissi. The commission could have provided effective relief. It could have said, we're going to set aside Fenner's sanction. We're going to cancel certain sanctions that we think produces constitutional concerns. And I'll also note that with respect to Mr. Smith's reply brief, I mean, he doesn't seem to be, I don't understand him to continue to be pressing the private non-delegation appointment clause arguments. But regardless, I think all of those are claims that he could have raised, and the commission could have provided effective relief. On the merits, turning the merits a little bit, there doesn't seem to be much difference between the administrative officers due to duties, the administrative officer who works for Fenner, and the ALJs who work for the government. If we were to think of this question, say, of the appointments clause should depend on duties, it seems like they're engaged in the exact same duties. They're essentially handling trials. Why should this case be different than Muccia? I think it's different in at least two very significant ways. The first, Your Honor mentioned the appointments clause. Obviously, a component of that test is also established by law. Mr. Smith concedes that these are not offices established by law. These are private self-regulatory offices. That goes also to the power that they're exercising and the duties that they have. Since the founding, there has been organizations of securities professionals that have organized amongst themselves. They've had disciplinary proceedings in front of an internal board. They've had hearings. They've heard testimony. And they've imposed discipline. Congress, when it approached the securities industry after the Great Depression, decided how to deal with that. And it chose to preserve that traditional self-regulatory system while providing for SEC supervision in the public interest. So then our hearing officers are doing that private function. I think their duties reflect that. Do you think it depends on whether the consent was truly voluntary? The reason I ask that is, yeah, there's a history of voluntarily entering these groups, getting back to the founding. But it's not necessarily voluntary anymore. In order to engage in the activity of becoming a broker, you have to associate with one of these entities. Since I think that the history there of that kind of coercion dates only to the 1980s, as far as I can tell. Do you think that this is maybe the key question? I wish I think, like, why should we consider this voluntary when you can't engage in the activity without joining one of these private organizations? Congress has put a statutory framework around this in the Exchange Act. And that's why it provided for SEC review in the public interest. And so I think confronting that question, the DC Circuit in the Alpine case addressed that kind of on private non-delegation grounds. But we don't have anything that looks like that here. Mr. Smith was disciplined for essentially controlling a FINRA member firm. The firm was a member of FINRA. He had the opportunity to raise arguments to the SEC. He, of course, didn't raise his constitutional objections at all. But he was able to raise his argument that, hey, I shouldn't be disciplined by FINRA here in these proceedings. The SEC rejected those. And as I noted, that's amply supported by the record. His constitutional claims are before this court. And I don't think he's provided any basis to not only call into doubt the longstanding security scheme and the self-regulatory industry, but particularly the commission's order here. Thank you. Thank you. We'll also now hear from FINRA. And Mr. Ryan, who you won't forget you. Mr. Tehrani, it's nice to see you. It's good to see you, Your Honor. May it please the court, Amir Tehrani for FINRA. On the question of statutory authority, consent has no bearing on FINRA's statutory authority over Petitioner. The SEC made the key factual findings here that Petitioner controlled a FINRA member. Indeed, it found at JA4 that Petitioner exercised iron-fisted control over the broker-dealer that was a member of FINRA. And he also engaged in the securities business by fraudulently marketing debt securities to customers of the broker-dealer. Those are the two statutory requirements to be an associated person subject to FINRA's jurisdiction. Petitioner does not contest either of those SEC factual findings here. On the question of statutory exhaustion, Petitioner had two and a half years to raise the Jercosy decision with the SEC because it was two and a half years between May of 2022 and August of 2024 between the Fifth Circuit's decision in Jercosy, which reached the same conclusion as the Supreme Court, and the SEC's order ending the administrative proceeding. For two and a half years, he could have filed a notice of supplemental authority, which is a procedure available before the SEC. As I said to Ms. Dixon, most of that time was pre-Jercosy, the actual decision. So it was only two months, I think, or a month or two post-decision, which you're more on notice at that point, certainly. But most of that period of time you described was before the Supreme Court ruled. It was before the Supreme Court ruled, but it was after the Fifth Circuit adopted the same rule of law as the Supreme Court. There was no reason that petitioner could not have alerted the SEC to that development. Just as the petitioner in Joseph Forrester Trucking could have raised the Lucia decision with the Department of Labor ALJ while that proceeding was ongoing, the petitioner here could have raised the Fifth Circuit's decision in Jercosy at any point over two and a half years, and he could have raised the Supreme Court's decision in Jercosy at any point over a two-month period. Petitioner? Mr. Tehrani, if we were to disagree with you and the SEC and find that there were reasonable grounds that kind of excuse this issue of exhaustion in the statute, would you agree that this case is on all fours with Jercosy, such that there was a Senate amendment problem? No, Your Honor. There are several key distinctions here. The most significant one being that FINRA is a private body, as Mr. Ryan acknowledges. FINRA is a private, self-regulatory organization, and it therefore is not subject to the requirements of Article III or the Seventh Amendment. Can I ask you how that's going to operate post-Jercosy? In other words, are you still taking the position that everyone who, quote-unquote, voluntarily joins FINRA, that they have now waived their jury trial right? It's not a question of waiver, Your Honor. The fact is that the Constitution simply does not apply to private, self-regulatory decisions. This is a private body that regulates its members and persons associated with it. Maybe I've misphrased it, or maybe I'm not understanding. If they don't like the decision they received from FINRA and the member appeals to the SEC, are they then allowed to say, I'd like to go to court rather than through the Ministry of Proceedings? No, Your Honor, because the SEC review proceeding is not analogous to common law proceedings at the time of the founding. Under Jercosy- We thought it was. I'm happy hearing that, but we thought it was. I'm trying to see, does the joining FINRA, which, again, is considered to be voluntary, but as I understand it, basically everyone has to join, so it doesn't feel that voluntary to me, in a sense. Obviously, Mr. Smith didn't think he had to join, but just going forward, with anyone who's part of FINRA, are they then still able to request? If we thought that these proceedings were just like the ones of Jercosy, are they still able to request a jury trial, or have they functionally given that up by joining FINRA? If this court were to conclude that there is sufficient state action here to trigger application of Article III and the Seventh Amendment, which we don't believe that there is, if this court were to conclude that there is a common law analog to these private, self-disciplinary proceedings under Jercosy, which we don't believe that there is, there still would not be a Seventh Amendment or Article III right, for the reason that Your Honor identified, which is that by joining FINRA or by associating with a FINRA member, the broker-dealer has waived his right under the Seventh Amendment to a jury trial. Here, the petitioner made the decision for his wholly controlled broker-dealer to become a member of FINRA. He didn't need to do that. He decided that as the chairman, the CEO, the founder of CSSC, his brokerage would join FINRA. And he further acknowledged at JA151 that if he started to engage in the securities business, he would be subject to FINRA's regulatory... ...option to not join FINRA? I thought it was pretty much mandatory that everyone... ...join... ...no ability not to join... Well, as an initial matter, CSSC is a company that engages in other lines of business, including investment advisory services that don't require membership in FINRA. It was the petitioner's choice as the person who wholly controlled the brokerage to branch into a new line of business and to join FINRA and to become... But the new line of business required them. The new line of business that arguably triggered the FINRA jurisdiction or potential membership. There are alternatives to joining... I mean, it's an unconstitutional conditions case, right? That's just the analysis I think of. Suppose the federal government passed a law saying if you drive on a federal highway, you agree to arbitrate any accidents or negligence cases. It strikes me that you essentially are giving up your Seventh Amendment right in that context, and we have to analyze it, whether that is a valid consent within the meaning of the Seventh Amendment. And so why would this case be... It's very different, Your Honor, because the Seventh Amendment and Article III do not apply to private self-regulatory proceedings. But they do apply to private... I mean, the Garden Variety case is a Seventh Amendment right between two private parties. So it's not the fact that the government is not a defendant here, is it? It's the fact that these are internal disciplinary proceedings that are not transpiring in courts. Going back to the time of the founding, private self-regulatory organizations such as the New York Stock Exchange and the Philadelphia Stock Exchange dealt with disciplinary matters internally, in private proceedings with no governmental involvement. And at the time of... But the difference between that time and this time is, in that time, if you wanted to be a stockbroker and you didn't want to join the NYSE, you'd just sell stocks outside the NYSE. In modern times, the government has passed a statute that says, if you want to be a broker, period, anywhere, you have to join one of these private associations, which I take it better as the only one for the vast majority of folks. So doesn't that make a difference, the fact that you can't engage in a line of business unless you join a private organization? It does not, Your Honor, because as an initial matter, to go back to my overarching point, the Seventh Amendment and Article III still don't apply here. In terms of the meaningful nature of the consent, this was consent, if it were relevant, which I don't believe it is constitutionally significant here, but if consent were relevant, this was a decision that Petitioner made for his wholly controlled brokerage to join FINRA instead of continuing to provide investment advice as an investment advisor, which is a role that does not require FINRA membership, instead of forming a competing National Securities Association, instead of applying for an exemption to the SEC, instead of transacting securities only on an exchange of which the Petitioner's brokerage was a member. All of those are alternatives available to a person who wants to engage in the securities industry without becoming a member of FINRA. So consent is not constitutionally relevant, but to the extent that it is, it was meaningful, it was knowing, and it was intelligent here. Are there any cases that raise this issue squarely that we're discussing yet in light of jarcossy? Not in light of jarcossy, Your Honor, but of course this case does not squarely present the issue because the jarcossy question... Maybe I agree with you on that. I was just asking are there other cases that take up... I think it's a very interesting question. I didn't know if there were other cases... There are not cases in the courts of appeals as of now that squarely present this issue. It's maybe too quick. I don't know. Are there cases in the SEC where parties raise this consistent with the SEC's rules that these types of issues be raised? There are other pending constitutional challenges against FINRA. Some of them have been brought under Axon, so they're brought directly in the district court. There's the DC Circuit's decision in Alpine, which is back on remand in the district court for the District of Columbia. So these issues are percolating, and there will be appropriate vehicles for addressing these questions, where they are preserved, where they are properly raised before the agency, where they are exhausted. But I would respectfully submit that this is not the case in which to grapple with these constitutional questions because they were not exhausted. Unless we appreciate you taking our questions on it. Any other questions from the panel? Okay, thank you very much. Thank you. Ryan, you have two minutes. Thank you. Just briefly, there is no 28-J process at the SEC. I'd also emphasize that this is not a situation where a litigant needs to advise a court of some decision that the court might be unaware of. This is a situation where the adjudicator itself, the SEC, was the party to the case in the Supreme Court. There was no need for Smith to bring to the SEC's attention the Jarkissi case. The Jarkissi case was against the SEC. The SEC knew it better than Mr. Smith knew it. FINRA counsel harkens back to the early days, and I think Judge Murphy has it right. That was a completely different time. In 1983, Congress required all broker-dealer firms in the U.S. to register with FINRA, with limited exceptions. And that came on the heels of 1975, where Congress gave these SROs the authority to enforce not just their own rules, but federal statutes. That makes it even more important that consent be voluntary. FINRA counsel also mentioned that this was a private self-regulator, and somehow that distinguishes it from Jarkissi. But there's nothing in Jarkissi that says it turned on whether the prosecutor was in the government or not. And, in fact, both the SEC and FINRA argue in this case that all FINRA is doing is aiding the SEC in exercising its governmental authority. Otherwise, it runs afoul of the private non-delegation doctrine. So once you accept that, the parallel between what FINRA is doing and what the ALJs are doing in two different spokes of the same SEC adjudicative docket is pretty obvious. In either case, the case bubbles up from a subadjudicator that's subject to SEC's oversight, and it funnels up to these SEC commissioners. And throughout the process, it's a part of the SEC's governmental activity. And so Jarkissi is on all fours with this. It's completely indistinguishable in any material way, if you ask me. Thank you very much. Time's up. Thank you very much for your arguments, and to all parties in this case, a very interesting case. That's our last case for the day.